## BURGESS v. STATE. (7 Div. 771.)*

(Court of Appeals of Alabama. April 11, 1922. Rehearing Denied May 30, 1922.)

1. **Criminal law ☞364(2)—Evidence that defendant brought two guns to place of crime held admissible as a part of the res gestæ.**

In a prosecution for murder, evidence by the daughter of deceased that defendant brought two guns with him to the place of the crime, one of them being a pistol, and that he handed it to his son, was admissible as a part of the res gestæ.

2. **Criminal law ☞368(3)—Evidence that deceased's gun was discharged accidentally held admissible as a part of the res gestæ.**

In a prosecution for murder, evidence by the daughter of deceased that she got her father's gun a few minutes after the shooting, and that it was accidentally discharged between hers and her father's feet, was admissible as a part of the res gestæ.

3. **Homicide ☞169(2)—Evidence that deceased and his daughter had been working on the ground where crime was committed held admissible.**

Where, in a prosecution for murder, the daughter of deceased testified that she and her father were not working on the ground on the morning of the day of the killing, permitting her to testify that she and her father had worked on the ground before was not reversible error, as tending to show that witness and deceased were in the habit of working at this particular place, and that their going there on the day of the killing was not designedly done.

4. **Witnesses ☞267—Wide latitude is allowed in cross-examination.**

Wide latitude is allowed on cross-examination, and such matters are largely within the discretion of the trial court.

5. **Criminal law ☞1169(1) — Introduction of gun wadding held harmless.**

In a prosecution for murder, the permitting of the introduction of gun wadding, which a witness testified he found in a hole near where deceased was lying, was harmless error.

6. **Homicide ☞300(7)—Instruction presupposing evidence that deceased dropped his gun held properly refused.**

In a prosecution for murder, an instruction that, if there is evidence adduced by the state tending to show that the daughter of deceased picked up the gun of her father immediately after he fell, and that it was accidentally discharged immediately after she took it, without her having pulled the hammer back, then the jury have a right to inquire into who pulled the hammer back in determining whether deceased prepared the gun for shooting before he dropped it, was properly refused, in view of evidence that deceased laid his gun down and was about eight steps from it at the time of the crime.

7. **Criminal law ☞785(16)—Instruction that testimony of daughter of deceased may be disregarded, if she has sworn falsely, held misleading.**

In a prosecution for murder, an instruction that, if daughter of deceased has willfully sworn falsely concerning a material fact, her testimony may be disregarded, and "if you have a reasonable doubt of defendant's guilt, you should acquit him," was properly refused, as being misleading.

8. **Criminal law ☞782(8)—Instruction as to conflicting evidence held properly refused.**

In a prosecution for murder, an instruction that when the testimony is conflicting, and cannot be reconciled after giving each witness credit for speaking the truth, all the testimony should be considered in the light of reasonableness or unreasonableness of the story told by the witnesses, as to "which of the parties to the controversy had a grievance and be on the aggressive to provoke a difficulty," *held* properly refused, as being unintelligible.

Appeal from Circuit Court, De Kalb County; A. E. Gamble, Judge.

Richard Burgess, alias, was convicted of murder in the second degree, and he appeals. Affirmed.

The following charges were refused to the defendant:

(19) I charge you that, if there is evidence adduced by the state tending to show that Laura Buckhanan picked up the gun of her father immediately after he fell, and that it was accidentally discharged immediately after she took it, without her having pulled the hammer back, then you have a right to inquire into who pulled the hammer back, in determining whether the deceased prepared the gun for shooting by pulling the hammer back before he dropped it.

(20) I charge you that, if you believe from the testimony that Laura Bell Buckhanan, the daughter of the deceased, has willfully sworn falsely concerning a material fact in this case, then you may disregard her testimony altogether, and if, after so disregarding her testimony, if you do so disregard it under the rule above

stated, you have a reasonable doubt of the defendant's guilt, then you should acquit him.

(21) I charge you that when the testimony is in conflict, and you cannot reconcile it, giving each witness credit for speaking truthfully, then you should consider all the testimony in the light of your experience, and in the light of reasonableness or unreasonableness of the story told by the different witnesses, and in view of your experience as reasonable men which of the parties to the controversy had a grievance and be on the aggressive to provoke a difficulty.

Isbell & Scott, of Fort Payne, for appellant.

The court erred in allowing the wadding to be introduced. 160 Ala. 82, 49 South. 329. Charge 20 was good, and should have been given. 196 Ala. 586, 72 South. 20; 81 South. 364; 13 Ala. App. 181, 69 South. 485. Charges 19 and 21 should have been given. 193 Ala. 51, 69 South. 531; 189 Ala. 579, 66 South. 600; 122 Ala. 85, 26 South. 236; 179 Ala. 263, 60 South. 111.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

MERRITT, J. The defendant was indicted for murder in the first degree, convicted of murder in the second degree, and sentenced to the penitentiary for a term of 20 years. The killing took place in a new ground, near the home of the deceased; there being present at the time the daughters of the deceased and the sons of the defendant. Without conflict the evidence shows that both the deceased and defendant went to the place where the fatal difficulty took place with their shotguns. The facts and circumstances growing out of and connected with the killing are in hopeless conflict.

[1] During the examination of Laura Givins, a daughter of the deceased and a witness for the state, she was asked by the solicitor, after stating her version of the shooting, if the defendant had more than one gun there? This question was objected to, and exception taken to the court's action in overruling it. The witness answered: "Yes, sir; I saw him give his son a pistol." While it does not appear from any of the testimony that the pistol was ever used, the wound from which deceased died being a gunshot wound, the fact that the defendant had a pistol there at that time, and handed it to his son, was all a part of the res gestæ, and the fact that he had it there tended to establish the contention of the state that he went there armed and prepared for a difficulty.

[2] This witness testified that she got her father's (deceased's) gun a few minutes after the shooting. She was then permitted to testify, over the objection of the defendant, that the gun went off between hers and her father's feet. This was a part of the res gestæ, and was on this account admissible.

[3] The witness stated that they—she and her father—did not work in this new ground on the morning of the day of the killing. The solicitor then asked her "if she had ever worked in that new ground before," and she answered she had. The question and answer was objected to, and the objections overruled. While this was rather far-fetched anticipation on the part of the solicitor, its object, no doubt, was to show that witness and deceased were in the habit of working at this particular place, and that their going there on this particular occasion was not designedly done, and on this ground the introduction of the testimony cannot be said to have constituted reversible error.

[4] Lincoln Lewis, a witness for the defendant, testified on his direct examination that he knew deceased, that he saw him on the morning of the day he was killed, and that deceased said he would kill defendant before the sun went went down. On cross-examination this witness stated that he did not go to Jackson county that day, nor the day before, but did go the week before. Over the objection and exception of the defendant he was permitted to state who it was that he went to Jackson county with. This was on cross-examination, where wide latitude must be had, and such matters rest largely within the discretion of the trial court. The action of the court in overruling the defendant's objections was entirely free from error.

[5] Bernard Morgan, a witness for the state, testified in rebuttal that he was at the place where the deceased was killed in about one hour after the killing; that there was a hole in the ground close to where deceased was laying, and that Frank Boozer got some gun wadding out of it. After its identification, over the objection and exception of the defendant, this wadding was offered in evidence. We are not quite clear as to the purpose of the introduction of this testimony; but there are one or two phases of the case which make its relevancy patent. It may have been in corroboration of the state's witness Laura Givins, that, when her father's gun fired, as she had testified to, it was fired close to his feet, and further, to disprove the contention of the defendant, that Laura Givins fired her father's gun at the defendant. At any rate, we do not see how the introduction of this testimony could have injuriously affected the defendant.

Refused written charges 5, 9, 10, and 15 are substantially covered by the court's oral charge and written charges given at the request of the defendant.

[6] Written charge 19 is predicated on the evidence adduced by the state, and presupposes that there was evidence that the deceased dropped his gun, when such is not a fact. The state's testimony is to the effect

that, when the deceased went to the new ground, he laid his gun down and was about eight steps from it, and did not have it at any other time. The charge was therefore abstract and was for this reason, if none other, properly refused.

[7] Charge 20 is involved, misleading, and confusing, and there was no reversible error in refusing it.

[8] Refused written charge 21 is unintelligible, and was properly refused.

We have examined the record and find no reversible error. The judgment of the circuit court is therefore affirmed.

Affirmed.